UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

KURT ROBERT SMITH,       )
       )
     Petitioner,       )
       )     No. 5:10-CV-91-KKC-HAI
v.       )
       )     REPORT & RECOMMENDATION
WARDEN COOKIE CREWS,       )
       )
     Respondent.       )
       )
       )

*** *** *** ***

On March 16, 2010, Petitioner Kurt Robert Smith, through counsel, filed a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. D.E. 1. On June 22, 2010, Respondent Cookie Crews filed a Response. D.E. 7. On that same date, Respondent also filed a Motion to Dismiss the Petition (D.E. 8), to which Petitioner filed a Response (D.E. 11). On March 1, 2011, the Court denied the Motion to Dismiss as moot, noting that it would address Respondent's arguments when it resolved Petitioner's Petition for habeas relief. D.E. 19. In the same Order, the Court also denied Petitioner's Motion for an Evidentiary Hearing (D.E. 13) as premature, noting that it would assess whether an evidentiary hearing was required after reviewing the parties' briefing, any transcripts and records of state court proceedings, and any other materials submitted pursuant to Rule 7 of the Rules Governing Section 2254 Cases. D.E. 19. In accordance with the Court's August 25, 2011 Order (D.E. 20), the parties have also filed memoranda addressing the applicability of *Cullen v. Pinholster*, 563 U.S. ___, 131 S. Ct. 1388 (2011) to Petitioner's request for an evidentiary hearing (*see* D.E. 21, D.E. 23, and D.E. 27),

which the Court addresses herein. Pursuant to local practice and 28 U.S.C. § 636(b), this matter was referred to the undersigned for a recommended disposition.

For the reasons described below, and based on a full review of the record, the Court finds that Petitioner has failed to show that he is entitled to relief pursuant to section 2254. Therefore, the Court **RECOMMENDS** that his Petition for a writ of habeas corpus be **DENIED.** Additionally, the Court **RECOMMENDS** that Petitioner's request for an evidentiary hearing be **DENIED** and that no Certificate of Appealability should issue.

## I. BACKGROUND

Petitioner is currently serving an imprisonment term of life pursuant to a March 5, 2002 judgment of the Fayette Circuit Court rendered following a jury trial. The jury convicted Petitioner of wanton murder for the death of his six-week-old son, Blake. The Court of Appeals of Kentucky described the facts as follows:

> On the evening of March 21, 2001, Smith, who lived apart from Blake's natural mother, Jessica Rudenis, took Blake to his parents' home. Blake, who had recently had surgery for a digestive ailment, had bouts of crying throughout the evening but eventually Smith was able to put him to sleep. At approximately 4:00 a.m., however, Blake woke up hungry and, exhausted from the child's repeated crying, Smith "lost it" and shook the baby back and forth and dropped him to the floor. Unaware that he had caused serious injury to Blake, Smith placed Blake in his bassinet and did not check on him again until the following morning when he discovered that Blake "had lost his color" and his lips were purple and blue. At that point, he realized that his burst of anger the previous night had injured the baby. At approximately 11:00 a.m., Smith's step-mother came into the room and found Smith holding the child. Concerned that Blake was having difficulty breathing, she called 911.
> A paramedic with the Lexington-Fayette County Division of Fire testified that at 10:51 a.m. on March 21, 2001, he was dispatched to the residence where he was met by a woman holding a small lifeless body. After an attempt to resuscitate Blake was made, he was transported to the University of Kentucky Medical Center and placed on a ventilator. On March 23, 2001, Blake was declared brain dead. An autopsy revealed that he had sustained serious bruising throughout his body and suffered blunt force trauma to the head.

*Smith v. Commonwealth*, No. 2006-CA-000064-MR, at 2–3 (Ky. Ct. App. June 13, 2007) (unpublished), D.E. 7-18 at 10–11.

Petitioner, through counsel, appealed as a matter of right pursuant to Section 110(2)(b) of the Constitution of Kentucky to the Supreme Court of Kentucky, which, in a unanimous memorandum opinion, affirmed. *Smith v. Commonwealth*, No. 01-CR-00693 (Ky. Oct. 23, 2003) (unpublished), D.E. 7-9 at 13–21. In his brief, Petitioner claimed that: 1) there was insufficient evidence to prove him guilty of wanton murder; 2) the trial court's jury instruction on first-degree manslaughter contained an error in that it omitted the concept of extreme emotional disturbance; 3) the trial court committed error by allowing evidence of prior incidents in which Petitioner yelled at the victim and that the victim previously received a bruised nose while in Petitioner's care; 4) during the Commonwealth's cross-examination of Petitioner, the Commonwealth pursued a line of questioning regarding letters sent by Petitioner's family on his behalf, and that line of questioning could be construed to mean that Petitioner perpetrated a fraud on the court by invoking his right to remain silent while his family members asked for leniency; 5) the trial court erroneously admitted into evidence a photograph depicting the injuries suffered by the victim, and; 6) the Commonwealth incorrectly stated the law defining intentional acts in its closing argument. *Id.* The Kentucky Supreme Court denied rehearing on January 22, 2004. D.E. 7-10 at 26.

On April 15, 2005, Petitioner filed a Motion to Vacate or Set Aside Judgment pursuant to Kentucky Rule of Criminal Procedure 11.42. D.E. 7-10 at 27–30. Petitioner alleged three grounds for relief: 1) he was denied effective assistance of counsel when trial counsel failed to object to jury instructions regarding extreme emotional disturbance and the definition of intent; 2) he was denied effective assistance of counsel and due process of law when trial counsel failed

to obtain a psychological evaluation of Petitioner and to engage other experts to investigate his mental health, and; 3) he was denied effective assistance of counsel and due process of law when trial counsel failed to present readily available mitigation testimony at the penalty stage. *Id.* at 28. On December 7, 2005, the Fayette Circuit Court denied Petitioner's Motion. D.E. 7-13 at 18–19.

Petitioner then presented those three arguments to the Kentucky Court of Appeals. D.E. 7-18 at 9–10. The Kentucky Court of Appeals ruled that Petitioner was barred from claiming that counsel rendered ineffective assistance by failing to seek an extreme emotional distress instruction within the first-degree manslaughter instruction because Petitioner had previously raised that claim on direct appeal and lost, and had simply recast the claim as one of ineffective assistance, which Kentucky law forbade at the time. *Id.* at 15–16. Separately, the Court found no prejudice as to counsel's failure to seek an extreme emotional disturbance component within the presumption of innocence/reasonable doubt instruction. *Id.* at 16. The Court also found no prejudice in counsel's failure to object to the jury instructions as to intent because Petitioner was convicted of wanton murder. *Id.* at 16–17. However, the Court reversed and remanded the case to the Fayette Circuit Court to hold an evidentiary hearing on Petitioner's claims concerning counsel's failure to obtain a mental health evaluation and to call readily available mitigation witnesses during the sentencing phase of his trial. *Id.* at 17. The Court of Appeals instructed the trial court to do three things: 1) determine if counsel's decisions on those two issues were trial strategy or deficient performance; 2) if the trial court found deficient performance, make a finding as to what mitigating evidence was available to counsel, and; 3) "determine whether there is a reasonable probability that the jury would have weighed the mitigating and aggravating factors differently." *Id.* at 15.

The Fayette Circuit Court held an evidentiary hearing as directed by the Kentucky Court of Appeals on October 4, 2007. D.E. 7-20 at 19. Petitioner was represented by counsel on collateral attack, including at the evidentiary hearing. In its order dated March 26, 2008, the Fayette Circuit Court held that Petitioner's counsel "did not abuse her professional discretion in providing substantial representation for the Defendant" and that counsel's decisions regarding a mental health evaluation of Petitioner and the presentation of mitigation witnesses at the sentencing phase were strategic trial decisions rather than instances of deficient performance. *Id.* at 20. It also found that "any error complained of would not have resulted in a different outcome for [Petitioner]." *Id.* Petitioner moved for reconsideration of the Fayette Circuit Court's decision on April 7, 2008. *Id.* at 22. The Court denied Petitioner's Motion in an order dated May 14, 2008. *Id.* at 33.

Petitioner then applied to the Kentucky Court of Appeals for relief. D.E. 7-25 at 8–28. In its September 11, 2009 opinion, the Court of Appeals applied the two-pronged test enunciated in *Strickland v. Washington*, *id.* at 19–20, and found that the Fayette Circuit Court had not erred when it rejected Petitioner's claims of ineffective assistance of counsel, *id.* at 27. The Court started by discussing trial counsel's decision not to consult with mental health experts, as well as her decision not to more fully consider pursuing a mental health defense. *Id.* at 20–25. After de novo review, the Kentucky Court of Appeals found no error in the Circuit Court's conclusion that trial counsel's decisions regarding mental health experts and a mental health defense were strategic trial decisions, and thus not deficient performance under *Strickland*. *Id.* at 23, 25. The Court then found that the Circuit Court did not err in finding that counsel's decision not to present mitigation witnesses was also not an instance of deficient performance. *Id.* at 27. Key to both of these findings was counsel's testimony at the evidentiary hearing that she did not consult

mental health experts or call mitigation witnesses because introducing evidence of Petitioner's mental state would have opened the door for the Commonwealth to introduce previous acts by Petitioner that would make him appear less sympathetic, and sympathetic portrayal was her strategy given that Petitioner admitted his guilt on the stand. *Id.* at 24, 26.

Petitioner then sought discretionary review before the Kentucky Supreme Court. D.E. 7-26 and 7-27. In an order dated March 10, 2010, the Kentucky Supreme Court denied Petitioner's motion with a single sentence: "The motion for review of the decision of the Court of Appeals is denied." D.E. 7-28 at 16.

On March 16, 2010, Petitioner filed his Petition for Writ of Habeas Corpus Under 18 U.S.C. § 2254. D.E. 1. On April 30, 2010, the Court ordered the Warden to respond (D.E. 3), which she did on June 22, 2010 (D.E. 7). On the same day, the Warden also filed a Motion to Dismiss. D.E. 8. On July 27, 2010, Petitioner filed a Response to the Warden's Motion to Dismiss (D.E. 11), and later adopted this Response as his Reply to the Warden's Response to Petitioner's Motion to Vacate (D.E. 29).

On August 25, 2011, the Court ordered both parties to file supplemental memoranda to discuss the impact of *Cullen v. Pinholster*, 536 U.S. ___, 131 S. Ct. 1388 (2011). D.E. 20. Petitioner filed his memorandum on October 7, 2011 (D.E. 21), and the Warden filed her Response to Petitioner's memorandum on November 2, 2011 (D.E. 23). After the Court granted an extension of time to file a Reply (D.E. 25), the Petitioner filed a Reply on December 16, 2011 (D.E. 27).

## II. ANALYSIS

In general, a state prisoner has a statutory right to collaterally attack his conviction or sentence. *See West v. Bell*, 242 F.3d 338, 346 (6th Cir. 2001) (stating that 28 U.S.C. § 2254

provides state prisoners with a statutory right to file a habeas corpus petitioner).  A state prisoner may seek federal habeas corpus relief on the ground that he is being held in custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  A petitioner must first exhaust his state court remedies before instituting a proceeding pursuant to 28 U.S.C. § 2254, unless "there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1).  To satisfy the exhaustion requirement, a habeas petitioner must fairly present the substance of his federal claims to the state court.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam).  This ensures that state courts, which have an equal obligation to protect the constitutional rights of defendants, "have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding."  *Picard v. Connor*, 404 U.S. 270, 275 (1971).

### A. Standard of Review and Deference Due to State Court Decisions

The Anti-Terrorism and Effective Death Penalty Act, Pub L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA) applies to all habeas corpus petitions filed after April 24, 1996, and requires "heightened respect" for legal and factual determinations made by state courts.  *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  Section 2254(d), as amended by AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This is a "difficult to meet . . . and highly deferential standard[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011) (internal quotation marks omitted). All findings of fact by the state court are presumed to be correct, and can be rebutted only by "clear and convincing evidence." *Mitchell v. Mason*, 325 F.3d 732, 737–38 (6th Cir. 2003), *cert. denied* 543 U.S. 1080 (2005); 28 U.S.C. § 2254(e)(1). Legal conclusions made by state courts are also given substantial deference under AEDPA. The Supreme Court has recently reiterated that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Nevada v. Jackson*, 569 U.S. ___, 133 S. Ct. 1990, 1992 (2013) (per curiam) (internal quotation omitted). It has also recently reiterated that "circuit precedent does not constitute clearly established Federal law." *Parker v. Matthews*, 567 U.S. ___, 132 S. Ct. 2148, 2155 (2012) (internal quotation omitted).

### B. Claims of Ineffective Assistance of Counsel

Whether a petitioner was deprived of his right to effective assistance of counsel is a mixed question of law and fact. *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003) (citing *Olden v. United States*, 224 F.3d 561, 565 (6th Cir. 2000)). Federal courts apply the "unreasonable application" prong of section 2254(d)(1) to mixed questions of law and fact. *Id.* (citing *Harpster v. Ohio*, 128 F.3d 322, 327 (6th Cir. 1997)). A state court decision results in an "unreasonable application of Federal law" pursuant to section 2254(d)(1) when it "applies [Supreme Court] precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citations omitted). The Supreme Court has stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal

law erroneously or incorrectly.  Rather, that application must also be *unreasonable*."  *Mitchell*, 325 F.3d at 738 (emphasis added) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)).  In addition, federal courts may only consider the holdings, as opposed to the dicta, of Supreme Court opinions as of the time of the state court decision, when evaluating whether the state court unreasonably applied "clearly established federal law."  *Id.* (citing *Williams*, 529 U.S. at 412).

*Strickland v. Washington*, 466 U.S. 668 (1984), establishes the elements of a claim of ineffective assistance of counsel.  Such a claim has two components.  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  However, a defendant is not permitted to second-guess trial counsel's strategic decisions.  *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002).  Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689 (internal quotations omitted).  Under the second component of a claim for ineffective assistance of counsel, "the defendant must show that the deficient performance prejudiced the defense."  *Id.* at 687.  That is, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A defendant has the burden of making both showings, otherwise "it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."  *Id.* at 687.  Finally, in appropriate circumstances, prejudice may be considered at the outset.  *See id.* at 697 ("A court need not determine whether counsel's performance was deficient before examining the prejudice suffered

by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

Recently, the Supreme Court commented on the interaction between the section 2254(d) and *Strickland* standards of review. *See Harrington v. Richter*, 131 S. Ct. 770 (2011). The Court emphasized that "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Id.* at 785. Thus, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

Later, the Court stated that it is "difficult" to establish a state court's application of *Strickland* as unreasonable under section 2254(d), noting that both standards are "'highly deferential' and when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (citations omitted). The Court cautioned federal courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Id.* According to the Court, under section 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Additionally, the Court noted that "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* (citation omitted).

Importantly, the Kentucky Court of Appeals accurately described the *Strickland* standard when disposing of Petitioner's ineffective assistance of counsel claims. D.E. 7-25 at 19–20.

### *1. Ground One – Failure to Consult with a Mental Health Expert and Investigate Mental Health Defenses*

#### a. Deficient Performance

Ground One alleges that Petitioner's trial counsel, Pam Ledgewood, performed her duties deficiently when she failed to investigate possible mental health defenses on behalf of Petitioner, highlighting her failure to obtain a mental health evaluation or to consult with a mental health expert. D.E. 1 at 49. Petitioner contends that because he confessed on the stand, all that was left for the jury to decide was the degree of his guilt and his punishment, and that his "mental health and background were the only conceivable evidence that could have mitigated his punishment." *Id.* Petitioner breaks down this Ground into four components: 1) counsel was aware of Petitioner's troubled childhood and instances indicating mental instability; 2) counsel could not be said to have a reasonable trial strategy without first more fully evaluating mental health defenses; 3) the absence of an expert prejudiced Petitioner, and; 4) AEDPA either does not apply, or applies but does not bar relief.

The Kentucky Court of Appeals reviewed Ledgewood's performance de novo and focused on the reasons she gave during the evidentiary hearing as to why she did not pursue an investigation of a mental health defense or enlist the services of a mental health expert. D.E. 7-25 at 21–23. In its opinion, the Court set forth at length the facts established at the evidentiary hearing. *Id.* at 14–18. The Court noted that Ledgewood testified that she was aware of reports reflecting childhood behavioral problems. *Id.* at 22. Ledgewood explained that she "made a conscious decision not to pursue [Petitioner's] mental state as an avenue of defense because she did not believe that [Petitioner] showed signs of mental illness as understood by Kentucky law." *Id.* at 22. She testified that she was also concerned that introducing such evidence at trial would open the door for the Commonwealth to present evidence of its own which would significantly damage her ability to portray Petitioner as a sympathetic figure. *Id.* at 22–23. The Kentucky Court of Appeals found that these two reasons taken together were evidence that Ledgewood's

decisions not to pursue a mental health defense and not to consult a mental health expert were strategic decisions based on a reasonable trial strategy. *Id.* at 24. Additionally, the Court noted that Ledgewood "saw no indications that [Petitioner] suffered from mental illness in her conversations and interactions with him and his family." *Id.* Recognizing that she was not a mental health professional, the Court noted that her observations "standing alone, might not suffice to explain [her] failure to more thoroughly investigate a mental health defense." *Id.* However, coupling those observations with the risk of opening the door to "a plethora of damaging evidence" led the Court to conclude that Ledgewood's strategy "could be second-guessed, but cannot be condemned as unreasonable or otherwise deficient." *Id.* at 25.

Instead of an unreasonable application of Federal law, the Kentucky Court of Appeals applied *Strickland* in a deliberate and reasoned manner. The Court thoroughly evaluated the facts established at the evidentiary hearing, and soundly applied *Strickland* to those facts. Petitioner now argues that, because Ledgewood was aware of Petitioner's behavioral problems, *Strickland* required that she consult a mental health expert as a required first step to then be able to formulate a reasonable trial strategy. This Court's review, however, is more lenient due to the double deference due under AEDPA. This Court cannot find that the Kentucky Court of Appeals applied *Strickland* in an unreasonable manner. At a minimum, there certainly is a "reasonable argument that counsel satisfied *Strickland's* deferential standard" as contemplated by *Harrison v. Richter*.

It is true that the Kentucky Court of Appeals did not address any prejudice flowing from the claimed failure to investigate a mental health defense and present a mental health expert. But, that omission is perfectly appropriate under *Strickland*. The Kentucky Court of Appeals explicitly found that "Ledgewood's performance was not deficient[.]" *Id.* at 25. *Strickland*

expressly allows for consideration of either deficient performance or prejudice without the need to consider the other if a defendant cannot prevail on the first. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). Thus, far from an unreasonable application of *Strickland*, the Kentucky Court of Appeals followed *Strickland*'s clear framework.

Petitioner argues in his Reply that under *Williams v. Taylor*, 529 U.S. 362 (2000), Ledgewood was obligated to conduct a thorough investigation of Petitioner's background before choosing a trial strategy. D.E. 11 at 2–3. The record before the United States Supreme Court in *Williams* established that counsel "failed to conduct an investigation that would have uncovered extensive records graphically describing Williams' nightmarish childhood, *not because of any strategic calculation* but because they incorrectly thought that state law barred access to such records." *Id.* at 395 (emphasis added). The Court described a situation in which a "failure to introduce the comparatively voluminous amount of evidence that did speak in [a defendant's] favor was not justified by a tactical decision to focus on [the defendant's] voluntary confession." *Id.* That is not the situation in Petitioner's case.

Petitioner devotes an entire subsection in his Petition to the fact that Ledgewood "was aware of Kurt's mental instability and troubled childhood." *See* D.E. 1 at 50. Petitioner cites the transcript of the evidentiary hearing where counsel admitted to knowledge of juvenile reports containing references to drug issues and attitude problems and containing recommendations that Petitioner receive counseling. *Id.* at 51–52. Counsel also admitted to being aware of Petitioner's hardships due to his parents' bitter divorce and custody battle as well as the death of his brother. *Id.* at 52. Petitioner also cites a litany of "red flags" to which counsel admitted to being aware,

including several items touching on Petitioner's emotional and mental state. *Id.* at 53–54. It appears from Petitioner's statements in his Petition that Ledgewood had a significant amount of knowledge and insight into Petitioner's background and mental state, even without the further investigation Petitioner states she should have undertaken. Not mentioned in the Petition is the fact that counsel further explained at the evidentiary hearing that—as opposed to counsel in *Williams*—her decision not to investigate Petitioner's mental health further was a strategic calculation. D.E. 7-25 at 22.

Petitioner also cites *Sears v. Upton*, 561 U.S. __, 130 S. Ct. 3259 (2010) for the proposition that the Kentucky Court of Appeals was required to determine whether counsel conducted a reasonable investigation prior to choosing her strategy. As the Kentucky Court of Appeals correctly noted, an alleged failure to adequately investigate a case "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." D.E. 7-25 at 23 (citing *Strickland*, 466 U.S. at 691). The Kentucky Court of Appeals examined counsel's investigation in light of all the circumstances, as discussed above, and found that Ledgewood's strategy was reasonable. While Petitioner would have liked the Kentucky Court of Appeals to review the investigation undertaken, or not undertaken, by Ledgewood standing alone, that is not the standard enunciated in *Strickland*. Because of the double deference due the state courts under AEDPA, the Court cannot find that the Kentucky Court of Appeals' application of *Strickland* was unreasonable as to this issue, nor that its decision was contrary to or an unreasonable application of *Williams* and *Sears*.

Petitioner's final argument as to this issue is that section 2254(d) does not apply, or if it does, that it does not bar relief. D.E. 1 at 58–60. The first statement is wholly incorrect. Of course, AEDPA applies to all habeas corpus petitions filed after April 24, 1996. *See Herbert v.*

*Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Petitioner filed his Petition on March 16, 2010. Therefore, AEDPA does apply to his case. Additionally, the Kentucky Court of Appeals expressly ruled that Ledgewood's performance was not deficient, D.E. 7-25 at 25, and therefore AEDPA deference applies. *See Rayner v. Mills*, 685 F.3d 631, 639 (6th Cir. 2012) ("[W]hen a state court decision relies only on one prong [of an ineffective assistance claim], the cases mandate AEDPA deference to that prong and de novo consideration of the unadjudicated prong.").

Petitioner relies upon a very strained reading of the opinion of the Kentucky Court of Appeals. It is true that the Kentucky Court of Appeals did not separately identify its findings of fact in its opinion. However, it did clearly fully analyze the factual record established at the evidentiary hearing and stated, in the very portion of its opinion finding a lack of deficient performance, that counsel chose not to delve into Petitioner's mental state out of the fear of opening the door to damaging evidence. The Court of Appeals expressly described that choice as a "strategy." D.E. 7-25 at 24. Petitioner's *Strickland* claim of deficient performance based on a failure to investigate a mental health defense was quite plainly adjudicated on the merits by the Kentucky Court of Appeals. Section 2254(d) therefore applies.[1]

Given its thorough review of the facts established during the evidentiary hearing held in Fayette Circuit Court, and its orderly application of *Strickland* to those facts, the Court finds that the Kentucky Court of Appeals did not unreasonably apply Federal law in rejecting this claim. Thus, Petitioner's first ground for relief fails.

### b. Prejudice

---

[1] The Court notes that Petitioner's citation to *Wood v. Allen*, 558 U.S. 290, 304 (2010), as establishing that the Kentucky Court of Appeals was first required to factually find that a strategy was employed, then find what that strategy was, then apply *Strickland*, is inaccurate. *See* D.E. 1 at 58 n.110. The single quoted sentence from *Wood* merely stands for the unremarkable proposition that the question of whether an error is committed in determining the facts is different from whether an error is committed in applying the law. *Wood* does not support any argument that section 2254(d) does not apply.

Petitioner also argues that he was prejudiced by Ledgewood's failure to obtain a mental health evaluation and otherwise consult with an expert. He speculates that "[h]ad an appropriate expert been consulted, the expert would have discovered that [Petitioner] had psychological problems which inhibited his ability to control his emotions . . . [permitting him] to establish that he was acting under an extreme emotional disturbance." D.E. 1 at 57.

The Kentucky Court of Appeals did not examine whether Ledgewood's failure to investigate mental health defenses, including consultation with an expert, prejudiced Petitioner, but the Fayette Circuit Court did. The Court of Appeals instructed the Circuit Court to do three things on remand: 1) determine if counsel's decision was trial strategy or deficient performance; 2) if the trial court found deficient performance, make a finding as to what mitigating evidence was available to counsel, and; 3) "determine whether there is a reasonable probability that the jury would have weighed the mitigating and aggravating factors differently." D.E. 7-18 at 15. On remand, the Circuit Court, after an evidentiary hearing, found against Petitioner on the first issue, and, citing *Strickland*, went on to conclude that "Any error complained of would not have resulted in a different outcome for the Defendant." D.E. 7-20 at 20. The Court of Appeals, however, never reached the issue of prejudice. "Under AEDPA, [a court reviews] the last state-court decision to reach the merits of the particular claims being considered." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011).

Thus, in summary fashion, the Fayette Circuit Court reached the issue of prejudice, but the Kentucky Court of Appeals ruled based only upon deficient performance. This begs the question—does AEDPA apply to the prejudice prong, does the more lenient de novo standard apply pursuant to *Rayner v. Mills*, 685 F.3d 631 (6th Cir. 2012), or does the "modified AEDPA deference" triggered by a state court adjudication with little analysis contemplated by *Vasquez v.*

*Jones*, 496 F.3d 564 (6th Cir. 2007) apply?  It is an interesting question, but one that need not be answered.  *Rayner* holds that "when a state court decision relies only on one prong, the cases mandate AEDPA deference to that prong and de novo consideration of the unadjudicated prong." *Rayner*, 685 F.3d at 639.  Even under *Rayner*, however, "a habeas court may decline to reach the second prong if it finds that the petitioner cannot succeed on the first prong."  *Id*. at 638 n.4.  *See also Washington v. McQuiggin*, No. 11-1856, 2013 WL 3466439, at *3 (6th Cir.  July 11, 2013) (citing this footnote from *Rayner* and stating "We resolve Washington's claim without reaching the prejudice prong of the *Strickland* test.  Because Washington cannot show deficient performance, there is no need to analyze whether he was prejudiced.").  Such a ruling based only on one prong of the analysis is expressly contemplated, indeed encouraged, by *Strickland*.  *See Strickland v. Washington*, 466 U.S. 668, 697 (1984) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.); *id*. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.").

The Court found above that the Kentucky Court of Appeals did not unreasonably apply *Strickland* when it found Ledgewood did not provide deficient performance.  Petitioner's own briefing acknowledges (as he must) that deficient performance and prejudice are separate components of a *Strickland* analysis.  *See* D.E. 1 at 49 ("If the court finds that counsel's performance was deficient, the court must then decide whether the substandard performance 'prejudiced' the defendant."); D.E. 27 at 3–4 ("The request for an evidentiary hearing relates specifically to the prejudice prong, and therefore there is no requirement that the court analyze the deficient performance prong before analyzing that claim" and observing in a footnote to that statement "The two prongs of the *Strickland* analysis are severable.").  Because the Court has

found Petitioner is not entitled to habeas relief because the Kentucky Court of Appeals did not unreasonably apply *Strickland* when evaluating Ledgewood's performance, the Court need not reach the issue of prejudice.

**2.      *Ground Two – Failure to Investigate and Present Readily Available Mitigation Evidence at Sentencing***

Petitioner next alleges that trial counsel was ineffective for failing to "investigate, interview, and call readily available mitigation witnesses to speak on [Petitioner's] behalf prior to sentencing." D.E. 1 at 61. Petitioner lists four witnesses who testified at the evidentiary hearing as potential mitigation witnesses whom trial counsel did not investigate or call to the stand. *Id.* at 63–69. He also argues that trial counsel's inaction violated both prongs of the *Strickland* standard, *i.e.*, prejudice as well as deficient performance. *Id.* at 70–72. Finally, Petitioner again avers that AEDPA either does not apply, or applies but does not bar relief. *Id.* at 72.

Petitioner identifies the four witnesses that should have been called at sentencing as: a Guidance Specialist in the Fayette County School system who knew Petitioner and had concerns about his background, home environment, and lack of role models; his mother who would have testified to suspected abuse by Petitioner's father; his sister who would have described concerns for Petitioner because their father was abusive and other family instability, and; a close family friend that would also have described a poor home environment. D.E. 12 at 63-69. A similar description of that testimony was included in Petitioner's brief to the Court of Appeals on collateral review. *See* D.E. 7-12 at 4–5. All of this testimony is persuasively described in the Petition.

However, the first question before this Court is not what outcome would have resulted had this testimony been presented at sentencing, *i.e.*, prejudice. Instead, the Kentucky Court of

Appeals resolved this claim by finding Ledgewood had not rendered deficient performance by failing to present these witnesses in mitigation at sentencing. The question before this Court is whether the Kentucky Court of Appeals unreasonably applied clearly established Federal law in making this determination. It did not.

Central to the Court's reasoning was Ledgewood's testimony "that she was fully aware of [Petitioner's] familial issues and the issues relating to his mental state." D.E. 7-27 at 8. Petitioner claims that counsel should have investigated those issues by interviewing the four ostensible mitigation witnesses and the failure to do so constitutes deficient performance under *Strickland*. But, given the required double deference due under AEDPA, the Court's focus is upon the opinion of the Court of Appeals, not strictly the action (or inaction) of counsel. Here, the Court of Appeals recognized Ledgewood's "concern that by exploring [Petitioner's] mental state as a possible mitigating factor, she would be allowing the Commonwealth an opportunity to bring in evidence that would interfere with her strategy of making [Petitioner] appear sympathetic before the jury." *Id*. at 8–9.

Given that awareness of Petitioner's familial issues and concern over opening the door to unfavorable evidence, the Court of Appeals again concluded that "we cannot say that counsel's fear was an unreasonable one." *Id*. at 9. The Court therefore affirmed the Circuit Court's finding of a lack of deficient performance under *Strickland*. The Court did note in its reasoning that "[d]ecisions relating to witness selection are normally left to counsel's judgment and this decision will not be second-guessed by hindsight," *id.*, which Petitioner contends is an impermissible categorical grant of deference that precludes habeas relief. However, it is clear that the Court of Appeals noted this general concept, but applied the reasonableness evaluation dictated by *Strickland* to the particular facts before it. Counsel's decision not to call the

witnesses named by Petitioner is another instance of her overarching trial strategy, which the Kentucky Court of Appeals found to be reasonable, and thus not deficient performance. *Id.* at 20. This is not an unreasonable application of *Strickland.*

Finally, Petitioner contends only in a conclusory fashion that AEDPA does not apply to this claim, again based on perceived deficiencies in the Court of Appeals' factual analysis. The Court of Appeals plainly adjudicated the deficient performance prong of this claim on the merits, and therefore section 2254(d) applies to that determination. *See Rayner v. Mills*, 685 F.3d 631, 639 (6th Cir. 2012) ("[W]hen a state court decision relies only on one prong [of an ineffective assistance claim], the cases mandate AEDPA deference to that prong and de novo consideration of the unadjudicated prong."). Under *Rayner*, de novo review might apply to an evaluation of the prejudice prong but, of course, the Court need not address both prongs given that the Court of Appeals did not unreasonably apply *Strickland* in its deficient performance analysis. Thus, Petitioner's second ground for relief fails.

### 3. Ground Three – Failure to Object to Jury Instructions Regarding Extreme Emotional Disturbance

As his third ground for relief, Petitioner claims ineffective assistance of counsel due to the failure to object to, or request, certain instructions concerning extreme emotional disturbance. Specifically, Petitioner claims that Ledgewood should have objected to the omission of the concept of extreme emotional disturbance ("EED") in the presumption of innocence/reasonable doubt instruction and in the first-degree manslaughter instruction. D.E. 1 at 77–80. The argument goes that Petitioner's defense at trial was based on EED, and the trial court accurately defined EED and included that concept in the murder instruction. *Id.* at 74. However, Petitioner argues that because EED was not mentioned in either the presumption of innocence/reasonable doubt instruction or the first-degree manslaughter instruction, and because Ledgewood failed to

correct that omission, she rendered ineffective assistance because she "prevented the jury from having a clear understanding of its options[.]" *Id*. at 76.

Under Kentucky law, EED is a defense (or its absence is an element) to murder, but not to first-degree manslaughter or wanton murder. *See* KRS 507.020. The jury herein was appropriately instructed of that defense in the trial court's murder instruction. Kentucky law holds that *if requested* and warranted by the evidence, a generic presumption of innocence/reasonable doubt instruction is required to include "an admonition to the jury that if it would otherwise have found [the defendant] guilty of murder, but had a reasonable doubt as to whether he was acting under EED, he could be convicted only of first-degree manslaughter." *Sherroan v. Commonwealth*, 142 S.W.3d 7, 23 (Ky. 2004). No such admonition was included in the presumption of innocence/reasonable doubt instruction, and Petitioner claims Ledgewood rendered ineffective assistance when she failed to request such an instruction or object to its omission. Further, characterizing EED as a mitigating factor to first-degree manslaughter pursuant to KRS 507.030, Petitioner claims Ledgewood was also ineffective in failing to seek an EED instruction in the first-degree manslaughter instruction.

Petitioner speculates that, if the jury was deadlocked on intent, the absence of EED in the presumption of innocence/reasonable doubt instruction and the first-degree manslaughter instruction "might well have [caused the jury to reach] a compromised verdict of wanton murder because the instructions given provided nothing to mitigate intent in the first-degree manslaughter instruction." D.E. 1 at 79.

The Kentucky Court of Appeals accurately cited to *Sherroan* when finding that Petitioner was not prejudiced by the failure to request that EED be included in the presumption of innocence/reasonable doubt instruction. Specifically, in addition to standing for the proposition

that such an instruction is required only if requested (which it was not) and warranted by the evidence, *Sherroan* held that the failure to include such an instruction "did not adversely affect [the defendant's] substantial rights." *Sherroan*, 142 S.W.3d at 23. The Kentucky Court of Appeals relied on this specific concept and held that "the failure to request the additional admonition in this case does not rise to the level of prejudice required to vacate a judgment pursuant to RCr 11.42." D.E. 7-18 at 16. Again, this was a straightforward application of the appropriate standard under *Strickland*. Even if the failure to request that EED be included in the reasonable doubt/presumption of innocence instruction could be found to be deficient, the Court of Appeals appropriately addressed only prejudice under *Strickland*, and the Court finds that the Kentucky Court of Appeals did not unreasonably apply *Strickland* to that portion of Petitioner's claim. The Court of Appeals plainly adjudicated the prejudice prong of this claim on the merits, and therefore section 2254(d) applies. *See Rayner v. Mills*, 685 F.3d 631, 639 (6th Cir. 2012) ("[W]hen a state court decision relies only on one prong [of an ineffective assistance claim], the cases mandate AEDPA deference to that prong and de novo consideration of the unadjudicated prong."). Under *Rayner*, de novo review might apply to an evaluation of the deficient performance prong but, of course, the Court need not address both prongs given the Court of Appeals did not unreasonably apply *Strickland* in its prejudice analysis. Thus, this portion of Petitioner's third ground for relief fails.

*Sherroan* also dooms Petitioner's claim that counsel rendered ineffective assistance by failing to request that EED be included in the first-degree manslaughter instruction. Importantly, this particular claim was not decided on the merits in the state court proceedings. Instead, the Kentucky Court of Appeals rejected Petitioner's argument on procedural grounds, specifically that Petitioner was attempting to relitigate an argument raised and rejected on direct appeal by

converting it into an ineffective assistance of counsel claim. D.E. 7-18 at 15–16. It cited *Brown v. Commonwealth*, 788 S.W.2d 500, 501 (Ky. 1990) and *Mills v. Commonwealth*, 170 S.W.3d 310, 326 (Ky. 2005), *overruled by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009), for the proposition that a defendant may not raise an issue in an RCr 11.42 motion that was rejected on direct appeal. *Id.* at 15. At the time of the Kentucky Court of Appeals decision, that was an established procedural bar in Kentucky. Indeed, *Mills* explicitly held that recasting an issue raised on direct appeal as an ineffective assistance claim did not overcome the relitigaiton bar. *Mills*, 170 S.W.2d at 326.

Respondent does not argue that this claim was procedurally defaulted, though such an argument appears to be supported by the record. Of course, the Court could consider procedural default *sua sponte, Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004), but *Sherroan* is so conclusive that the Court will address the claim on the merits. In doing so, the Court finds that because the state courts did not adjudicate this claim on the merits, AEDPA does not apply. Therefore, the Court reviews this claim under pre-AEDPA standards of review, specifically de novo. *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2012).

In *Sherroan*, the defendant claimed "error in the trial court's failure to include the presence of EED as an element of the lesser included offence of manslaughter in the first degree." *Sherroan*, 142 S.W.3d at 22. The Supreme Court of Kentucky analyzed the statutory requirements and prior case law, including its own prior case law establishing that requiring the state to prove EED as an element of first-degree manslaughter is error, and noted that a murder conviction by a jury carries with it a finding that the "jurors found the absence of EED beyond a reasonable doubt." *Id.* (discussing *Haight v. Commonwealth*, 938 S.W.2d 243, 248 (Ky. 1996) and quoting *Baze v. Commonwealth*, 965 S.W.2d 817, 823 (Ky. 1997)). Based upon the

statutory requirements and that previous case law, the Kentucky Supreme Court held that, in *Sherroan*, "the trial court's instructions on manslaughter in the first degree correctly stated the law." *Id.*

That principle dooms Petitioner's claim as to ineffective assistance concerning the first-degree manslaughter instruction as well. In other words, the Court held in *Sherroan* that a defendant similarly situated to Petitioner is not entitled to the inclusion of EED in a first-degree manslaughter instruction.[2] Essentially then, Petitioner claims counsel should have requested an instruction that would not have "correctly stated the law."[3] That cannot be deficient performance. Nor can it be prejudicial for the jury to have received a first-degree manslaughter instruction that "correctly state[d] the law" of Kentucky per *Sherroan*. Thus, even reviewed de novo, this claim fails under either prong of *Strickland*.

### 4. *Ground Three – Failure to Object to Erroneous Jury Instructions Regarding Intent*

Petitioner next alleges that trial counsel was ineffective for failing to object to the jury instructions regarding intent, which Petitioner alleges were incorrect. D.E. 1 at 81. The Circuit Court instructed the jury that "a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause that result or to engage in that conduct." D.E. 1 at 80. Specifically, Petitioner maintains that pursuant to KRS 507.020(1)(a) as construed by *Elliott v. Commonwealth*, 976 S.W.2d 416 (Ky. 1998), the definition of intent should have focused only

---

[2] Petitioner is not only not entitled to such an instruction, such an instruction would be in error because, in junction with a proper jury instruction on murder listing the lack of EED as an element, it would require the Commonwealth to "prove beyond a reasonable doubt the absence of [EED], and to prove beyond a reasonable doubt the absence of [EED] to convict the defendant of manslaughter." *Elery v. Commonwealth*, 368 S.W.3d 78, 90 (Ky. 2012).

[3] Respondent suggests that *Sherroan* requires such an instruction if requested. *See* D.E. 7-1 at 61–62. However, *Sherroan* so held only with respect to a request to include EED in a reasonable doubt/presumption of innocence instruction, which was a separate portion of the Supreme Court's opinion from that discussing EED within a first-degree manslaughter instruction. *See Sherroan*, 142 S.W.3d at 22–23. Nothing in *Sherroan* suggests the same rule applies to a request to include EED in a first-degree manslaughter instruction.

on results, *i.e.*, that the defendant intend the results of the conduct, in this case, intent to cause death or serious injury. *Id.* at 81–82.

The Kentucky Court of Appeals found Petitioner's argument unpersuasive for the same reason it denied his ineffective assistance of counsel claim as to the EED issues with respect to the reasonable doubt/presumption of innocence instructions: lack of prejudice. D.E. 7-18 at 17. It found that even if Petitioner's interpretation of the murder statute was correct, *i.e.*, that intentional murder requires intent only to result and not to conduct, Petitioner was not convicted of intentional murder. *Id.* Because he was convicted of wanton murder, which does not require that the result be intended per KRS 501.020, he was unable to show prejudice as a result of trial counsel's failure to object to the jury instructions. *Id.*

Because the Kentucky Court of Appeals appropriately addressed Petitioner's ineffective assistance of counsel claim on this matter using the standard enunciated in *Strickland*, the Kentucky Court of Appeals applied established Federal law to Petitioner's claim. The Court finds that the Kentucky Court of Appeals did not unreasonably apply *Strickland* to the prejudice portion of Petitioner's claim. Of course, that means that this Court need not address deficient performance. Thus, this part of Petitioner's third ground for relief fails.

### 5.    *Ground Four – Cumulative Ineffective Assistance of Counsel*

As his final ground for relief involving an allegation of ineffective assistance of counsel, Petitioner asserts that the Court should evaluate the totality of the ineffective assistance of counsel to which Petitioner was subjected, rather than simply item-by-item. D.E. 1 at 84. Petitioner states that Kentucky state courts did not perform such an analysis. *Id.* The Warden argues in return that Petitioner's claim is procedurally defaulted, or that because the individual

allegations of error were without merit, there can be no accumulation of error. D.E. 7-1 at 66–67.

Contrary to some courts, the Sixth Circuit has not interpreted Supreme Court precedent as permitting a "cumulative error" argument, but has instead held that "cumulative error" is not cognizable as a separate ground of relief under 28 U.S.C. § 2254. *See Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."); *Millender v. Adams*, 376 F.3d 520, 529 (6th Cir. 2004). In addition, as noted by the Warden, because Petitioner has failed to show that counsel committed any errors of constitutional magnitude, he cannot show that the cumulative effect of counsel's actions prejudiced him. *See Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007). This argument thus fails both procedurally and on the merits.

### C. Ground Five – Petitioner's Right to Remain Silent

When a petitioner brings a federal habeas claim that was ***not*** decided on the merits in state court proceedings, and the petitioner has defaulted his federal claim in state court "pursuant to an independent and adequate state procedural rule," he is barred from seeking federal habeas review unless he "can show cause for the default and actual prejudice as a result of the alleged violation of federal law." *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). "For the doctrine of procedural default to bar federal review, however, a firmly established and regularly followed state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that rule." *Id.* Thus, federal courts have jurisdiction to review a petitioner's claim "unless the last state court from which the petitioner sought review clearly and expressly invoked a firmly established

state procedural rule as a basis for its decision to reject review of the petitioner's federal claim." *Id.* at 739 (citing *Coleman*, 501 U.S. at 735). "A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 1316 (2012).

It is a firmly established Kentucky procedural rule that, unless the error is palpable, failure to make a contemporaneous objection at the trial level results in a loss of the issue for appeal. *Nichols v. Commonwealth*, 142 S.W.3d 683, 691 (Ky. 2004) ("Appellant admits that this claim of error was not preserved for appellate review by contemporaneous objection, but he urges this Court to conduct review under RCr 10.26. We decline to do so because an alleged error is not reviewable under RCr 10.26 unless (1) it is '[a] palpable error,' and (2) 'a determination is made that manifest injustice [has] resulted from the error.' Here, the claimed error is neither 'palpable' nor did 'manifest injustice' result from it."). *See also Sherley v. Commonwealth*, 889 S.W.2d 794, 796 (Ky. 1994) (noting that "[t]he Federal courts have repeatedly refused to review alleged error where state courts have initially refused to consider the issue due to procedural default," and that failure to make a contemporaneous objection as required by a state procedural rule results in procedural default of the claim at issue absent a demonstration of cause and prejudice). An error is palpable if it is "easily perceived or obvious." *Nichols*, 142 S.W.3d at 691. Petitioner's final ground for relief is that his Fifth and Sixth Amendment rights were violated when the Commonwealth Attorney cross-examined Petitioner at trial regarding his exercise of his post-arrest, pre-trial right to remain silent. D.E. 1 at 84. During cross-examination, the Commonwealth Attorney questioned Petitioner's silence

regarding letters sent by his family to the court on his behalf, specifically the fact that the writers of these letters were misled by Petitioner as to the events surrounding Blake's death.  *Id.* at 85–86.  The argument Petitioner advances is that the line of questioning could be construed to mean that Petitioner was perpetrating a fraud on the court by exercising his right to remain silent.  D.E. 7-9 at 18.  The Warden correctly states that this claim is procedurally defaulted.

On direct appeal, the Kentucky Supreme Court noted that the issue was not properly preserved for review, and so it reviewed only for palpable error under Kentucky Rule of Criminal Procedure 10.26.  *Id.*  The Supreme Court of Kentucky found that Petitioner's claim did not rise to the level of palpable error because "once the accused takes the stand, he is subject to cross-examination for all matters pertaining to the prosecution, including state of mind which may be inferred from actions preceding and following the charged offense."  *Id.* at 18 (internal quotation marks and citation omitted).  Petitioner was procedurally barred from raising this issue on appeal.  *See id.*  Petitioner's section 2254 motion is devoid of any facts that would establish cause and prejudice for the default.  Therefore, Petitioner is barred from raising this issue on federal habeas review because he has defaulted his federal claim "pursuant to an independent and adequate state procedural rule."  *Mitchell*, 325 F.3d at 738 (6th Cir. 2003) (citing *Coleman*, 501 U.S. at 750).

In his Reply, Petitioner argues that it is not clear whether the Kentucky Supreme Court reached the merits or instead disposed of the claim procedurally, based on its statement regarding what a defendant may expect during cross-examination if he should choose to take the stand.  D.E. 11 at 23.  The Court does not find the Kentucky Supreme Court's analysis of Petitioner's claim at all ambiguous.  The statement to which Petitioner refers appears as an explanation of why Petitioner's claim does not rise to the level of palpable error, which is one of the

requirements of the procedural bar at issue, *not* an analysis of the merits of the case. This claim is procedurally defaulted, and thus fails.

## D. Evidentiary Hearing

On March 1, 2011, the Court denied a Motion for Evidentiary Hearing (D.E. 13) filed by Petitioner. D.E. 19. The Order stated that the Court would assess the need for an evidentiary hearing after reviewing the petition, the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7. *Id.* On August 25, 2011, the Court ordered the parties to submit supplemental memoranda addressing the impact of *Cullen v. Pinholster*, 563 U.S. ___, 131 S. Ct. 1388 (2011), on Petitioner's request for an evidentiary hearing. D.E. 20. Having reviewed the materials listed in the Court's order at Docket Entry 19 as well as the parties' memoranda regarding the application of *Pinholster*, the Court takes up Petitioner's request for an evidentiary hearing.

The Supreme Court in part II of *Pinholster* stated succinctly, "[w]e now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 1398. In a previous case, the Supreme Court noted "that when the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Id.* at 1399 (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). The result of *Pinholster* is that a district court may not hold an evidentiary hearing in which new evidence is introduced when reviewing a habeas claim under 18 U.S.C. § 2254(d). Fed. Habeas Corpus Manual § 6.9 (May 2013). Because section 2254(d) applies only to habeas claims adjudicated *on the merits* by a state court, evidentiary hearings are not prohibited by *Pinholster* in circumstances in which the state court did not adjudicate a petitioner's claim on the merits. *Id.*

In his Motion for Evidentiary Hearing, Petitioner requests an evidentiary hearing on the question of whether he was prejudiced by trial counsel's failure to investigate possible mental health defenses. D.E. 13 at 1–3. He states that the state courts did not provide a full and fair opportunity to litigate the issue for various reasons. *Id.* at 3. He also states that he has been diligent in pursuing this claim, as evidenced by his unsuccessful request to hold an evidentiary hearing on this matter in the Kentucky state courts. *Id.* at 3–4. Added to that, Petitioner requested funds for a mental health evaluation by an expert prior to the evidentiary hearing on collateral attack, but the Fayette Circuit Court denied that motion by reserving a ruling until after the hearing. D.E. 1 at 7–8. The Court's determination after the hearing that no deficient performance had been rendered meant no expert funds for an evaluation were ever made available. Petitioner therefore requests an evidentiary hearing and appointment of an expert in order to address the prejudice prong of his claim. *Id.* at 3.

As noted above in Part II.B.1, the Kentucky Court of Appeals found "that [effective] assistance was rendered in this case and . . . that Ledgewood's performance was not deficient as to this issue. Therefore, [Petitioner's] claim of error is rejected." D.E. 7-25 at 25. The opinion of the Kentucky Court of Appeals contains no analysis of the prejudice (or lack thereof) caused by counsel's failure to consult a mental health expert. However, the Fayette Circuit Court did summarily address the prejudice prong and rejected the assertion that Petitioner was prejudiced by counsel's failure to consult a mental health expert. D.E. 7-20 at 20. Again, this posture begs the question of whether AEDPA applies. Curiously, there are three possibilities.

First, if the Fayette Circuit Court order is assumed to be the "last state-court decision to reach the merits of the particular claim[] being considered," *Davis v. Lafler*, 658 F.3d 525, 531

(6th Cir. 2011), then the issue of prejudice is subject to review under AEDPA. *Pinholster* then restricts the Court to reviewing only the state court record as to this claim.

Second, if the Court assumes that the Kentucky Court of Appeals opinion is the last state-court decision to reach the merits of the particular claim being considered, the prejudice portion of the claim was not adjudicated on the merits for the purposes of AEDPA. As noted above, the Kentucky Court of Appeals dispensed with Petitioner's claim by finding that counsel's performance was not deficient, and thus never reached the issue of prejudice. D.E. 7-25 at 25. "When a state court relied only on one *Strickland* prong to adjudicate an ineffective assistance of counsel claim, AEDPA deference does not apply to review of the *Strickland* prong not relied upon by the state court." *Rayner v. Mills*, 685 F.3d 631, 638 (6th Cir. 2012).

Third, the Sixth Circuit "applies 'modified AEDPA deference' in circumstances . . . where the state court adjudicated the claim but with little analysis on the substantive constitutional issue." *Vasquez v. Thompson*, 496 F.3d 564, 569 (6th Cir. 2007). This involves "a 'careful' and 'independent' review of the record and applicable law, but [a habeas court] cannot reverse 'unless the state court's decision is contrary to or an unreasonable application of federal law.'" *Id*. at 570.[4] This is not to suggest that any conclusions drawn herein are not the product of a "careful" and "independent" review of the record and applicable law. The Fayette Circuit Court's cursory analysis of prejudice contains little analysis, and thus may trigger review under *Vasquez*.

However, no matter what level of deference applies to the prejudice prong of the analysis, Petitioner is not entitled to an evidentiary hearing because such a hearing would be futile. Under *Pinholster*, the record is complete and conclusive as to whether Petitioner was provided deficient

---

[4] Although in this passage the *Vasquez* court describes the power to "reverse" a state court's decision, this clearly was a reference to the power to grant habeas relief.

performance on the question of counsel's investigation of potential mental health defenses. The Court finds, based on that record reviewed consistent with AEDPA, that Petitioner is not entitled to habeas relief because the Kentucky Court of Appeals did not unreasonably apply *Strickland* when evaluating deficient performance. To obtain habeas relief, Petitioner would have to establish both deficient performance and prejudice. Because he cannot establish the former, no fact that could be established at an evidentiary hearing as to the latter could entitle him to relief.

In other words, an evidentiary hearing would be futile and that is a sufficient basis to deny the request for such a hearing. The Sixth Circuit has held that even in the face of a potentially meritorious argument as to deficient performance, a finding of no prejudice under AEDPA and an inability to establish any fact that could be developed that would result in granting the writ renders a hearing futile. *McAdoo v. Elo*, 365 F.3d 487, 499–500 (6th Cir. 2003); *see also Bowling v. Haeberlin*, No. 03-28-ART, 2012 WL 4498647, at *91 (E.D. Ky. Sep. 28, 2012) (finding hearing as to deficient performance would leave undisturbed the court's finding of no prejudice, so an evidentiary hearing could not result in facts entitling a section 2254 petitioner to relief). That is the case here. Even if Petitioner were granted a hearing, including the expert funds and evaluation he seeks, no fact developed could result in a finding of deficient performance.

### E. Certificate of Appealability

A Certificate of Appealability may issue where a petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 335–38 (2003) (discussing development of standard). The

reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484. None of the claims presents a close issue involving a violation or unreasonable application of clearly established federal law, or any other avenue of relief under section 2254. No reasonable jurist would find the assessments above to be wrong or debatable; thus, no Certificate of Appealability should issue.

### III. CONCLUSION AND RECOMMENDATION

Having reviewed each of Petitioner's grounds for section 2254 relief, the Court concludes that Petitioner has failed to make the requisite showing that would entitle him to any relief. Therefore, the Court **RECOMMENDS** that Petitioner's Petition for habeas corpus (D.E. 1) be **DENIED.** The Court further **RECOMMENDS** that Petitioner's request for an evidentiary hearing be **DENIED** and that no Certificate of Appealability should issue.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2254 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of

further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 30th day of September, 2013.

Signed By:

Hanly A. Ingram

United States Magistrate Judge